Phyllis P. COOK

v.

Felicia W. COOK and
Frederick D. Cook.

Supreme Judicial Court of Maine.

Submitted on Briefs May 8, 1990.
Decided May 21, 1990.

Joel F. Bowie, Howard & Bowie, Damariscotta, for plaintiff.

Peter C. Fessenden, Ranger, Fessenden & Copeland, P.A., Brunswick, for defendants.

Before McKUSICK, C.J., and ROBERTS, GLASSMAN, WATHEN and CLIFFORD, JJ.

McKUSICK, Chief Justice.

In this case we review a summary judgment entered by the Superior Court (Lincoln County, *Alexander, J.*) in an action for the foreclosure of a real estate mortgage. Although the summary judgment does not dispose of a counterclaim in the foreclosure action, it is immediately appealable under the death knell exception to the final judgment rule. Because genuine issues of material fact remain regarding the validity of the notes and mortgages being foreclosed and of the foreclosure proceeding itself, we vacate the entry of summary judgment.

During the pendency of a divorce proceeding between Frederick D. Cook and Felicia W. Cook, the husband unbeknownst to the wife issued two notes and mortgages on the marital home in Southport to his mother, Phyllis B. Cook, for about $17,000. Title to the home stands in the husband's sole name. Phyllis subsequently filed the present foreclosure action against Freder-

ick, naming Felicia as co-defendant on the ground that she "might have a marital interest in the premises." Frederick filed no answer and allowed himself to be defaulted on the foreclosure complaint, even though the record indicates that a substantial equity exists in the property. In her answer, Felicia pleaded the affirmative defense that the foreclosure action was part of a fraudulent scheme perpetrated by Frederick and his mother to deprive Felicia of her marital interest in the home, and by counterclaim pleaded, *inter alia*, that the execution and delivery of the notes and mortgages were fraudulent under the Uniform Fraudulent Transfer Act, 14 M.R.S.A. §§ 3571–3582 (Supp.1989). On Phyllis's motion, opposed by Felicia alone, the court on November 3, 1989, entered a summary judgment ordering foreclosure. By the court's order, Phyllis can sell the marital home at the end of a 90–day redemption period if defendants fail to pay the sums due on the notes given by Frederick. After the court denied Felicia's motion for reconsideration, she immediately appealed to this court.[1]

 The summary judgment of foreclosure is not a final judgment because Felicia's counterclaim remains unadjudicated. Such nonfinal judgments are normally not immediately appealable, *see Bacon v. Penney*, 418 A.2d 1136, 1139 (Me.1980); Field, McKusick & Wroth, *Maine Civil Practice* § 56.8, at 358–59 (2nd ed. Supp. 1981). The death knell exception to the final judgment rule, however, permits an appeal "from an interlocutory order where 'substantial rights of a party will be irreparably lost if review is delayed until final judgment.'" *Myerowitz v. Howard*, 507 A.2d 578, 580 (Me.1986) (citation omitted). We have exactly that situation here. On June 2, 1989, five months before the Superior Court entered its summary judgment, the District Court (Wiscasset, *Studstrup, J.*) in the Cook divorce action had entered an order dividing Frederick and Felicia's marital property. With regard to the family home, the court declared that:

> The family residence ... in Southport ... is found to be mixed marital and non-marital property. The Court finds the value of this property to be $190,000, with an outstanding mortgage indebtedness of $128,500. Seventeen Thousand Dollars of the mortgage indebtedness represents personal loans to [Frederick] from his mother for which he should be solely responsible and which should not detract from the marital estate in the property. Deleting this $17,000, the net equity in the property is $78,500.... After considering all the factors set forth in 19 M.R.S.A. § 722–A, it is further ORDERED that [Frederick] shall pay to [Felicia] the sum of $35,000 for her share in the marital estate in this property. [Frederick] shall pay this sum, plus simple interest accruing at 10% per annum, from June 1, 1989, within a 48 month period from that date. In order to secure payment of this amount, [Frederick] shall give to [Felicia] a mortgage in the amount of $35,000. In order to ensure continued housing for [Felicia] and the three minor children, [Felicia] shall have the right to live in the house without any rent until such time as the $35,000 plus any accrued interest is paid to her.

Despite the divorce court's determination that the notes and mortgages were Frederick's personal debt, the summary judgment of foreclosure has the practical effect of requiring Felicia, in light of Frederick's default and apparent collusion with his mother, to pay Frederick's personal debt with accumulated interest in the present amount of more than $21,100 within 90 days of the entry of judgment simply to preserve her occupancy rights in the marital home. Otherwise, pursuant to the foreclosure order, Phyllis could sell the property, pay off the superior lien, take what was owed her, and distribute the remainder to Frederick alone. As a practical matter, the summary judgment permanently forecloses relief on Felicia's counterclaim. Moreover, absent an immediate appeal Felicia will be forever denied any effective opportunity to be heard on her affirmative defense that the foreclosure proceeding was itself part

---

1. Under M.R.Civ.P. 62(a), the foreclosure judg- ment is stayed pending appeal.

of a collusive and fraudulent scheme. Appeal of the foreclosure order, despite its interlocutory nature, is appropriate at this time.

■ We now move to the merits of Felicia's appeal. Frederick sued Felicia for divorce in January 1987. On March 5, 1987, and on July 11, 1988, Frederick gave his mother notes secured by mortgages on the family home. The first hearing on the divorce occurred on July 12, 1988, and only then, according to Felicia's affidavit, did she learn of Phyllis's lien on the home. Of course, Phyllis at all relevant times knew that in the pending divorce proceedings Felicia had a marital claim to the property and that Felicia had not joined in the notes and mortgages. Phyllis commenced her foreclosure action in December 1988 and moved for summary judgment of foreclosure in September 1989 after the divorce court had entered its order dividing the marital property.

Felicia contends that the timing, the secrecy, and the other circumstances of the issuance of the notes and mortgages made them fraudulent conveyances. Phyllis has not contradicted or even responded to Felicia's affidavit. Viewed in the light most favorable to Felicia, the record before the motion justice reflects that there were close financial and personal ties between Frederick and his mother, who had taken an active interest in her son's divorce, even to the extent of seeking intervenor status, and that the pair of them were determined to carry out Frederick's threat to "do anything possible to avoid paying [Felicia] any money." Frederick's secret creation of a lien on the family home in favor of his mother, Phyllis's foreclosure action, and Frederick's failure to defend against his mother's foreclosure action despite the substantial equity apparently existing in the property—all during the pendency of the contested divorce proceeding—do indeed raise serious factual questions whether the notes and mortgages and the attempted mortgage foreclosure were frauds upon Felicia's marital rights. *Cf. Restatement (Second) of Property* § 34.1(1) (Tent. Draft No. 13, 1990) (spousal rights cannot be cut off by a donative transfer made in contem-

plation of an imminent divorce). With these genuine issues of material fact still unresolved, the Superior Court's grant of summary judgment of foreclosure was plainly in error.

The entry is:

Summary judgment vacated.

All concurring.