Marleen PERRON et al.

v.

Louis PETERSON.

Supreme Judicial Court of Maine.

Argued Jan. 30, 1991.
Reargued June 7, 1991.
Decided Aug. 1, 1991.

Murrough H. O'Brien (orally), Portland, for plaintiff.

Michael J. LaTorre (orally), Platz & Thompson, Lewiston, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

GLASSMAN, Justice.

■ The plaintiffs, Marleen Perron, as personal representative, and Marleen Perron and Raymond Perron, as parents of their deceased son Scott, appeal from the summary judgment entered in the Superior Court (Penobscot County, *Smith, J.*) for the defendant, Louis Peterson, on Count I of their complaint alleging that Peterson, while hunting in the woods near the Perrons' home, negligently shot and killed the Perrons' minor son Scott.[1] We affirm the judgment.

The Perrons filed their complaint for wrongful death against Peterson on November 22, 1988. After the Perrons' re-

---

1. the trial court granted a summary judgment for Peterson on Count II of the Perrons' complaint, which alleged that Peterson had violated a criminal statute that requires the reporting of a hunting fatality, *see* 12 M.R.S.A. § 7406(15) (1981), on the ground that the criminal statute does not create a private cause of action for its violation. The Perrons do not appeal from this portion of the court's decision. Peterson did

not seek, and accordingly the trial court did not grant, a summary judgment on Count III of the Perrons' complaint, which raised allegations of wrongful death against an unknown defendant, John Doe. Because no party has been served under this count and neither the Perrons nor Peterson sought its dismissal, we disregard this count for purposes of determining the finality of the court's judgment under M.R.Civ.P. 54(b).

quest for a jury trial, Peterson filed a motion for a summary judgment, and both parties filed memoranda and affidavits in connection with that motion. After a hearing, the court granted the summary judgment for Peterson, and the Perrons appeal.

■■■ The Perrons contend that their affidavits generated the requisite factual issues on the element of proximate causation: whether their son's wound was self-inflicted or was inflicted by a third party, and whether Peterson was the party who negligently caused their son's death. We disagree. For purposes of ruling on the motion, all evidence, and reasonable inferences to be drawn from that evidence, must be viewed in the light most favorable to the nonmoving party, and "the sole function of the presiding justice is to determine whether there is a disputed factual issue, not to decide such an issue if found to exist." *Levesque v. Chan*, 569 A.2d 600, 609 (Me. 1990). In most civil actions based on the alleged negligence of a defendant, the element of proximate causation is a factual determination to be resolved at trial by the finder of fact. *See Laferriere v. Paradis*, 293 A.2d 526, 528–29 (Me.1972).

On the morning of November 29, 1986, the Perrons' minor son Scott, after leaving a note assuring his parents that he would return by noon, went hunting alone in the woods near the Perrons' home in Stockholm. When Scott failed to return home by early afternoon, his parents formed a group of friends and neighbors to search the woods. During the afternoon, the search party met Peterson as he was dragging a deer carcass from the woods. Scott Perron's body was found the following morning by the nearby Armstrong Brook with his rifle lying with its barrel against his chest and pointed in the direction of a fatal gunshot wound to his head.

■■■ Assuming without deciding that there may be a genuine factual issue as to whether the wound was not self-inflicted, we are unable to accept the Perrons' contention that they generated the requisite factual issue of whether Peterson was the third party who caused their son's death.

The affidavit evidence relied on by the Perrons is essentially as follows: On the day that Scott Perron died, Peterson and his son and nephew were hunting in the same general vicinity where Scott was shot. There was a discrepancy between Peterson's statement that he hunted on Pin Ridge, an area removed from the place where Scott was shot, and the affidavit of Raymond Perron regarding the absence of tracks in the snow on Pin Ridge around the time of Scott's death. In two interviews conducted long after Scott's death, Peterson first denied, then later admitted that he shot a deer on that date. There was affidavit evidence about cries for help following gunshots. The medical evidence indicated that Scott's death was instantaneous, which eliminated the possibility that the cries came from Scott. A few days after Scott's death, while searching the area where Scott's body was found, Raymond Perron claims to have observed branches severed by bullets near where Scott was found and signs in the snow that he concluded were made by a fallen deer. Nine months later, Raymond found two live rounds of ammunition on the ground about 100 feet from where Scott's body was discovered, in a line with the position where he concluded the deer had fallen and where Scott's body had been located. Still later, two rounds of spent shells were discovered near where Scott's body had been found, and another live round was recovered 20 feet from the location of the other live rounds. Marleen Perron stated in an affidavit that Peterson visited the funeral home prior to Scott's funeral and said to her that "[y]ou'll never know how sorry I am."

It is undisputed that there were at least three persons hunting in the area on the date in issue. There was no evidence linking the ammunition or spent shells that were found to the fatal wound suffered by Scott or to the gun used by Peterson on that date. To rely on Peterson's statement of sorrow and his inconsistent response as to whether he shot a deer on that date in order to link him to Scott's death reaches

beyond the bounds of permissible inference. Even when viewed in a light most favorable to the Perrons and the reasonable inferences that can be drawn therefrom, *see Spickler v. Greenberg*, 586 A.2d 1232, 1233 (Me.1991), we hold that the trial court did not err in determining that the Perrons failed to generate a genuine issue of fact as to whether Peterson's conduct caused Scott's death.

The entry is:

Judgment affirmed.

All concurring.