Orrin PARSONS

v.

William T. WRIGHT et al.

Supreme Judicial Court of Maine.

Argued April 26, 1994.

Decided Nov. 10, 1994.

---

Donald S. Hornblower (orally), David M. Sanders, Livermore Falls, for plaintiff.

Steven J. Mogul (orally), Gross, Minsky, Mogul & Singal, Bangor, James MacMichael (orally), MacMichael & Talbot, Skowhegan, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and DANA, JJ.

DANA, Justice.

Somerset County, its Sheriff William Wright, and his assistant Betty Wright appeal from an order of the Superior Court (Somerset County, *Kravchuk, J.*) denying a summary judgment with respect to that portion of Orrin Parsons's suit brought pursuant to 42 U.S.C. § 1983 (1981).[1] Because we conclude that the Wrights are immune from the section 1983 claim, we remand for the entry of a summary judgment in their favor.[2]

I.

Viewed most favorably to Parsons, the facts may be summarized as follows: On January 7, 1988, Parsons was arrested for not appearing at a court hearing on various charges related to the operation of his motor vehicle. His bail was set at $10,000 double surety bond or $1,000 cash. Although Parsons had the resources to make bail, he opted not to do so because he believed that the arrest was improper and that he would be appearing before the court within a few

---

1. Title 42 U.S.C. § 1983 provides as follows:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. Appellate review of a denial of a summary judgment motion is ordinarily barred by the final judgment rule. *Jenness v. Nickerson,* 637 A.2d 1152, 1154 (Me.1994). "An exception is made for a motion based on immunity from trial which

days.[3] With respect to this last assumption, Parsons was mistaken. For reasons unexplained on the record he was not brought before the court for forty-eight days.

Parsons, who was obese and suffered from arthritic hips and poor personal hygiene, testified at his deposition that the defendants did not adequately respond to his medical, health, and safety needs during his incarceration.[4] For example, despite his repeated requests for a heating pad, he was allowed to use it only once. His request for a special recliner chair was also denied. Some of his requests to see a physician were ignored, and he recalled seeing the jail doctor only once.[5] Parsons also experienced respiratory problems, was frequently short of breath, and suffered from severe swelling of his ankles.

Because Parsons could walk only with crutches, he had great difficulty with the jail's slippery floors. Although his testimony is conflicting, he apparently fell three times during the period of his incarceration. After a particularly bad fall in his cell, which caused one of his crutches to break, he remained on the floor all night while his calls for help went unanswered.[6] A jail official later supplied him with replacement crutches, but they were too short and made walking even more perilous.

Parsons also experienced difficulty using the toilet in his cell because it was low and there were no rails. Another witness testified that Parsons had feces on his prison uniform as a result of his inability to use the toilet. The shower also became a hazard because of the slippery floor and the absence of rails or a chair.

According to another inmate Parsons was in great pain, emitted a foul body odor, and frequently urinated and defecated on himself. The inmate also claimed that Parsons's mental and physical condition deteriorated to the point where he could not change or dress himself. Robert Mattingly, a friend of Parsons who visited the jail several times, noticed that Parsons appeared confused, and told Sheriff Wright that Parsons would die unless something was done.

Sheriff Wright testified that the jail was not a proper place to house handicapped inmates, that the jail staff was not trained to handle them, and that there was no written policy regarding their care. Betty Wright, who was the chief turnkey of the jail and oversaw its operation, did not have many direct contacts with Parsons, but was aware of his foul odor and his difficulties in using the toilet. On one occasion, she arranged for Parsons to see the prison doctor.

All three county commissioners testified that they were unaware of their statutory duties with respect to the jail.[7] The commissioners also testified that they either did not consider the issue of handicapped inmates during the 1984 renovation of the jail, or could not recall that the issue was raised.

On February 24, 1988, a court-appointed attorney filed a motion requesting that Parsons be released on his own recognizance. The court granted the motion and Parsons was released from jail that same day. Two days after his release, he was examined by a doctor and then immediately hospitalized. Parsons spent twelve days in intensive care

---

is lost if a summary judgment is improperly denied." *Id.*

3. He had other reasons to remain in jail. He said, "at least [it was] warm [t]here and [I was] getting fed, that's all I could do at home, in the middle of winter."

4. Parsons also testified that he had been treated "all right" in the jail and that the jail officials did their best to accommodate him. He did not believe that any officials intentionally harmed or ignored him, were callous about his needs, or mistreated him.

5. Parsons did not believe that the doctor's examination was thorough and disagreed with the diagnosis of gout. According to another physician

who later treated Parsons, the jail doctor's failure to diagnose Parsons's serious health problems constituted medical malpractice.

6. Another witness swore in an affidavit that a jail employee deliberately ignored Parsons's pleas for help.

7. Pursuant to 30–A M.R.S.A. § 1651 (Pamph. 1993), the county commissioners "shall examine the jail in their county, take necessary precaution for the security of prisoners, for the prevention of infection and sickness and for the accommodations of the prisoners."

and was diagnosed as suffering from congestive heart failure.

In January 1990 Parsons filed the instant action in which he alleged, *inter alia*, that the defendants violated his civil rights and were liable pursuant to 42 U.S.C. § 1983. After extensive discovery, the defendants filed a motion for a summary judgment with respect to the section 1983 claim. The trial court denied the motion on two grounds. First, the court concluded that the defendants were not entitled to a qualified immunity in light of Parsons's "claim that he was forced to remain on the prison floor for extended periods of time, denied access to personal hygiene items, and denied medical care when he clearly required it." Second, the court found that there is a genuine issue of material fact regarding whether the Somerset County Commissioners were deliberately indifferent to Parsons's medical needs.

## II.

■ Whether the Wrights are entitled to a qualified immunity is a question of law for the court. Government officials performing discretionary functions are immune from actions brought pursuant to section 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Jenness v. Nickerson*, 637 A.2d 1152, 1155 (Me.1994) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).

> The application of the qualified immunity doctrine turns on the "objective legal reasonableness" of the official's action viewed in light of the "clearly established" legal rules at the time the action was taken. In order to determine that a right is clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."

*Ryan v. City of Augusta*, 622 A.2d 74, 76 (Me.1993) (citations omitted). The unlawfulness must be apparent in light of preexisting law. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

■ Viewing the facts in a light most favorable to Parsons, we conclude that the record would not support a finding that the alleged acts or omissions of the Wrights[8] constituted a violation of Parsons's clearly established rights. *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 104–06, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976) (medical malpractice does not become a constitutional violation "merely because the victim is a prisoner"); *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir.1987) (affirming dismissal of section 1983 suit where prison staff's delay in providing necessary medical equipment caused substantial injury to inmate); *Morin v. Department of Corrections*, 727 F.Supp. 699, 701 (D.Me.1990) (granting a summary judgment in section 1983 suit where prisoner alleged he was not provided with adequate medical care and was forced to perform a job that exacerbated his injury). Because reasonable officials in the Wrights' position would not have clearly understood that they were violating Parsons's rights, the Wrights are immune from section 1983 liability.

■ Somerset County is not entitled to either an absolute or a qualified immunity for its alleged omissions.[9] *Owen v. City of Independence*, 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980). Accordingly, the Superior Court's determination that there remains a disputed issue of fact precludes the entry of a summary judgment in the County's favor. We affirm the Court's denial of the County's motion.

The entry is:

Denial of the Wrights' summary judgment motion vacated. Remanded for entry of a summary judgment in their favor. The deni-

---

**8.** Parsons's claims include: the failure to provide adequate medical care; the failure to supply a chair in the shower, railings and seat for the toilet, and crutches of appropriate length; and the failure to respond to cries for help that they did not personally hear.

**9.** Parsons's claims include: the failure to train and supervise jail personnel, the failure to routinely inspect the jail, and the failure to consider the needs of handicapped inmates.

al of a summary judgment to Somerset County is affirmed.

All concurring.