Kenneth E. **WEBB**, individually and as Personal Representative of the Estate of Pamela Webb, and Virginia M. Webb

v.

Jeffrey **HAAS**, et al.

Supreme Judicial Court of Maine.

Argued Jan. 4, 1995.
Decided Oct. 10, 1995.

---

claim of Kenneth Webb, individually and as personal representative of the Estate of Pamela Webb, and Virginia Webb pursuant to the Maine Tort Claims Act (Act), 14 M.R.S.A. §§ 8001–8118 (1980 & Supp.1994), and 42 U.S.C.A. § 1983 (1994). The Webbs cross-appeal from the order (*Chandler, J.*) granting the Maine Turnpike Authority's motion to dismiss and the order (*Mead, J.*) granting the State's motion to dismiss.

The Webbs' complaint arises out of the death of their daughter after she apparently was abducted on the Turnpike.[1] On appeal, Haas contends that (1) the Webbs' claims pursuant to the Act are barred by the statute of limitations, (2) he is entitled to immunity from the Act, (3) the Webbs failed to comply with the pleading requirements of section 1983, and (4) he is entitled to immunity from the Webbs' section 1983 claim. By their cross-appeal, the Webbs contend that (1) their claim pursuant to the Act against the State was not precluded by sovereign immunity, and (2) their claim under the Act against the Authority was not barred by the statute of limitations. For reasons stated below, we vacate that part of the order dismissing the Maine Turnpike Authority, but affirm the order of the Superior Court in all other respects.

David G. Webbert (orally), Law Offices of Phillip E. Johnson, Augusta, for Plaintiffs.

William R. Fisher (orally), Monaghan, Leahy, Hochadel & Libby, Portland, for Haas.

Andrew Ketterer, Attorney General, Paul Stern (orally), Assistant Attorney General, Augusta, for State of Maine.

Elizabeth G. Knox (orally), Thompson & Bowie, Portland, for M.T.A.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

Jeffrey Haas appeals from an order entered in the Superior Court (Kennebec County, *Chandler, J.*) denying his motion to dismiss and/or for a summary judgment on the

The Webbs have alleged the following: Haas was a Maine State Police Trooper assigned to patrol the Turnpike. On July 1, 1989, Haas went on duty at 11:00 p.m., entered the Turnpike in Gray, and drove south. At approximately 11:35 p.m., he observed a disabled pickup in the southbound breakdown lane near mile 30 in Biddeford. Haas did not see anyone around the vehicle and observed that the truck had a flat tire, a spare tire was on the pavement, and the truck's tailgate was down. Haas did not stop but proceeded south to the York toll booth. He remained there for approximately an hour and fifteen minutes.

---

1. The Webbs filed a complaint against Jeffrey Haas, the State of Maine, and the Maine Turnpike Authority seeking recovery for wrongful death (Count I), negligent and intentional infliction of severe emotional distress (Count II), vicarious liability against the State (Count III) and the Turnpike Authority (Count IV), negligent hir-

ing, supervision, and investigation (Count V), violations of the Webbs' state and federal civil rights by failing to stop and investigate, concealment and making false statements, failure to train and supervise, and the cover-up of the investigation (Counts VI–XII).

Thereafter, Haas drove north and again observed the disabled pickup. He did not observe anything different and again did not stop. Eventually, at 2:30 a.m., he stopped and conducted an inspection of the pickup. He filled out a patrol check card, which is used to mark and identify disabled vehicles. Haas did not order the vehicle towed because there was a dog in it.

On July 2, 1989, blood was found near the pickup and earrings were found ground into the gravel nearby. The State Police suspected that the driver may have been abducted. At a meeting with his night supervisor the next evening, Haas denied seeing the vehicle when he passed by the site at approximately 11:35 p.m. the previous night. The State Police subsequently opened an investigation into the disappearance of Pamela Webb, but Haas did not tell the investigators that he actually first saw her truck at 11:35 p.m. on the night of July 1.

On approximately July 18, 1989, the body of Pamela Webb was found in the woods of New Hampshire. It was determined that Webb had been the driver of the pickup and that she had been murdered.

In September 1989, Haas admitted that he first observed the pickup at 11:35 p.m. Haas was instructed to complete a report on the incident, and in the report Haas incorrectly stated that he had stopped, checked the pickup, and filled out a patrol check card at 11:35 p.m. He also gave the investigators a falsified patrol check card stating that he inspected the vehicle at 11:35 p.m.

On October 11, 1989, Haas admitted for the first time that he did not stop at 11:35 p.m. on the night of July 1 and that he did not inspect Webb's truck until 2:30 a.m. on July 2. He also admitted that the patrol check card he submitted in September had been falsified. Haas was dismissed from the State Police effective November 20, 1989 for the falsification of official State Police records and for his untruthfulness during the

investigation of the disappearance and murder of Pamela Webb.

From July 2, 1989 until February 7, 1992, the Webbs had continuing contact with the State Police. On February 7, 1992, a member of the State Police called Mrs. Webb to tell her about an article concerning Haas's dismissal that was expected to be published the next day in the *Kennebec Journal.* This was the first time the Webbs learned that Haas had been fired or that he had been suspected of wrongdoing. Thereafter, the Webbs filed a formal notice of claim pursuant to the Act, and, on June 30, 1992, they filed this action against Haas, the State of Maine, and the Turnpike Authority. The trial court subsequently granted Haas's motion for a stay of discovery.

 The court granted motions to dismiss the complaint in favor of the State (*Mead, J.*) and the Authority (*Chandler, J* ). The court also dismissed the state civil rights claims against Haas, and denied Haas's motion to dismiss and/or for a summary judgment in all other respects (*Chandler, J.*). Haas appeals and the Webbs cross-appeal.[2]

### HAAS'S APPEAL

 Acting on Haas's motion to dismiss and/or for a summary judgment, the court considered matters outside of the pleadings. Normally, consideration of such matters converts a motion to dismiss into a motion for a summary judgment. M.R.Civ.P. 12(b) & (c); *Colby v. York County Comm'rs,* 442 A.2d 544, 548 (Me.1982). In this case, however, Haas secured a stay of discovery against him. Accordingly, we review the motion acted on by the court as a motion to dismiss. When reviewing a motion to dismiss, we assume that all of the facts as alleged in the complaint are true. *Bowen v. Eastman,* 645 A.2d 5, 6 (Me.1994); *Sargent v. Sargent,* 622 A.2d 721, 723 (Me.1993).

The complaint is examined in the light most favorable to the plaintiff to determine whether it alleges the elements of a cause

**2.** Although this is not an appeal from a final judgment, it involves the issue of immunity and is immediately appealable pursuant to the collateral order exception to the final judgment rule. *Creamer v. Sceviour,* 652 A.2d 110, 112 n. 4

(Me.1995); *Ryan v. City of Augusta,* 622 A.2d 74, 75 (Me.1993); *Polley v. Atwell,* 581 A.2d 410, 412–13 (Me.1990); *Lord v. Murphy,* 561 A.2d 1013, 1015 (Me.1989).

of action or facts entitling the plaintiff to relief on some legal theory. It should not be dismissed unless it is beyond doubt that no relief can be granted under any facts that might be proved to support the plaintiff's claim.

*Bowen,* 645 A.2d at 6 (citations omitted).

## I.

■ Haas first contends that the Webbs' claims pursuant to the Act should be dismissed because the claim accrued on the date of Pamela's abduction and was not filed within the two-year statute of limitations. The Webbs contend that the running of the statute should be tolled until the date on which they learned that Haas had been fired for intentionally falsifying a police report.

■ The Act contains a two-year statute of limitations. 14 M.R.S.A. § 8110 (1980). In cases of fraudulent concealment, however, the statute of limitations is extended to six years from the date the claimant discovers the cause of action. 14 M.R.S.A. § 859 (Supp.1994).[3]

■ When reviewing a motion to dismiss, we assume that all the facts as alleged in the complaint are true. *Bowen,* 645 A.2d at 6; *Sargent,* 622 A.2d at 723. It is generally not appropriate to decide on the basis of the pleadings whether a defendant's conduct was fraudulent. *Akins v. Firstbank, N.A.,* 415 A.2d 567, 569 (Me.1980).

The Webbs filed their complaint after the two-year statute of limitations had expired. In their complaint, however, they allege that Haas has fraudulently concealed the facts of their cause of action from them and they were prevented from having any awareness of the claims until February 1992. The allegation of fraudulent concealment in the Webbs' complaint is sufficient pursuant to section 859 to withstand a motion to dismiss based on noncompliance with the statute of limitations.

## II.

■ Haas contends that he is entitled to personal immunity pursuant to 14 M.R.S.A. § 8111(1)(C) and (E) on the Webbs' claim pursuant to the Act. He contends that he should receive immunity for deciding not to stop and investigate Pamela's abandoned vehicle immediately after seeing it.

■ The Act provides governmental employees with immunity for performing either discretionary functions or intentional acts or omissions within the scope of employment, unless such actions were in bad faith. 14 M.R.S.A. § 8111(1)(C), (E).[4] For activities not immune pursuant to section 8111, the Act establishes "broad liability" on the part of the employee. *Moore v. City of Lewiston,* 596 A.2d 612, 615 (Me.1991); *see* 14 M.R.S.A. § 8102(2–A) (Supp.1994).

By their complaint, the Webbs allege that Haas failed to comply with patrol procedures,

3. 14 M.R.S.A. § 859 (Supp.1994) provides that

[i]f a person, liable to any action mentioned, fraudulently conceals the cause thereof from the person entitled thereto, or if a fraud is committed which entitles any person to an action, the action may be commenced at any time within 6 years after the person entitled thereto discovers that he has just cause of action, except as provided in section 3580.

4. 14 M.R.S.A. § 8111(1) (Supp.1994) provides in pertinent part:

Notwithstanding any liability that may have existed at common law, employees of governmental entities shall be absolutely immune from personal civil liability for the following:

. . . .

C. Performing or failing to perform any discretionary function or duty, whether or not the discretion is abused; and whether or

not any statute, charter, ordinance, order, resolution, rule or resolve under which the discretionary function or duty is performed is valid;

. . . .

E. Any intentional act or omission within the course and scope of employment provided that such immunity shall not exist in any case in which an employee's actions are found to have been in bad faith.

The absolute immunity provided by paragraph C shall be applicable whenever a discretionary act is reasonably encompassed by the duties of the governmental employee in question, regardless of whether the exercise of discretion is specifically authorized by statute, charter, ordinance, order, resolution, rule or resolve and shall be available to all governmental employees, including police officers ... who are required to exercise judgment or discretion in performing their official duties.

obstructed justice, lied to police investigators, falsified a police report, and engaged in deceit. For the purposes of our review of the trial court's action on Haas's motion, we must assume that those allegations are true. *Bowen*, 645 A.2d at 6; *Robinson v. Washington County*, 529 A.2d 1357, 1359 (Me.1987). The Webbs have alleged that the actions are not within an officer's discretion and that Haas did not perform them in good faith. Based on those allegations, the Superior Court correctly denied Haas's motion.[5]

### III.

 Haas further contends that the Webbs failed to comply with the heightened pleading requirement[6] for section 1983 claims because their claim neither identifies the federal right that Haas has allegedly violated nor does it identify conduct of Haas that rises to the level of "deliberate indifference." Accordingly, he argues, the section 1983 claims against him should be dismissed. We disagree. The complaint explicitly alleges that Haas failed to stop and investigate, deliberately and intentionally made false statements, and concealed the truth, thus violating the Webbs' civil rights. Regardless of whether the heightened pleading requirement is applicable to this claim,[7] the Webbs' complaint alleges sufficient facts to withstand the challenge on that ground.

**5.** The Superior Court concluded that a police officer does not have discretion in deciding whether to inspect a disabled vehicle when first encountering it. It was incorrect for the court to make that factual conclusion at this stage in the proceedings. Haas may be entitled to personal immunity for failing to stop when first seeing the vehicle if, at a later stage in the proceedings, he is able to establish that it was a discretionary function or was an intentional act or omission within the scope of employment not performed in bad faith.

**6.** The heightened pleading requirement provides that

"[i]n cases against government officials involving the likely defense of immunity we require of trial judges that they demand that the plaintiff's complaints state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity."

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, ——,

### IV.

 Haas contends that he is protected from the Webbs' action by the doctrine of qualified immunity pursuant to 42 U.S.C.A. § 1983[8] because he has not violated a clearly established right of the Webbs'.

The Webbs may maintain this claim only if Haas is not entitled to qualified immunity, a doctrine shielding governmental employees from law suits and liability for their discretionary actions. Pursuant to the doctrine of qualified immunity, " 'government officials performing discretionary functions[ ] generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Creamer*, 652 A.2d at 112–13 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982)).

By their complaint the Webbs have alleged that Haas obstructed justice, intentionally withheld information, and violated the clearly established constitutional right of access to the courts, thus depriving them of their right to sue the persons responsible for the death of Pamela. Even though the Webbs may fail to withstand a subsequent motion for a sum-

113 S.Ct. 1160, 1163, 122 L.Ed.2d 517, 524 (1993) (quoting *Elliott v. Perez*, 751 F.2d 1472, 1473 (5th Cir.1985)).

**7.** In *Leatherman*, the Supreme Court determined that the heightened pleading requirement is inapplicable to section 1983 cases alleging municipal liability. The Court, however, had "no occasion to consider whether [its] qualified immunity jurisprudence would require a heightened pleading in cases involving individual government officials." *Leatherman*, 507 U.S. at ——, 113 S.Ct. at 1162, 122 L.Ed.2d at 523.

**8.** 42 U.S.C.A. § 1983 (1994) provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

mary judgment on the issue of whether they have demonstrated that Haas violated a clearly established constitutional right, in the present posture of this case the complaint must be read in the light most favorable to the Webbs. *Bowen*, 645 A.2d at 6. The Superior Court correctly determined that it is not "beyond doubt that no relief can be granted under any facts that might be proved to support the [Webbs'] claim." *Id.*

## V.

### THE WEBBS' CROSS–APPEAL

■ By their cross-appeal, the Webbs contend that the State has waived its general immunity from suit by purchasing two liability insurance policies that cover their claim pursuant to the Act and that the State should not have been dismissed from the case. We disagree.

■ Contrary to the motions filed by Haas and the Authority, the State's motion to dismiss was properly treated as a motion for a summary judgment. M.R.Civ.P. 56(c). Matters outside of the pleadings, the two insurance policies, were before the court and considered by it, and, most importantly, the Webbs did not contend that more discovery was needed on the issue of the State's immunity. *See* M.R.Civ.P. 12(b). "We review the grant of a motion for summary judgment for

errors of law, viewing the evidence in the light most favorable to the party against whom the judgment was entered ... [and] we 'will affirm a summary judgment when there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law.' " *Oceanside at Pine Point Condominium Owners Assoc. v. Peachtree Doors, Inc.*, 659 A.2d 267, 269 (Me.1995) (quoting *Smith v. School Admin. Dist. No. 58*, 582 A.2d 247, 248 (Me.1990) (citations omitted)).

The Act confers a general grant of immunity to governmental entities, subject to limited exceptions. 14 M.R.S.A. § 8103(1). In addition to the enumerated exceptions to immunity set forth in section 8104–A, none of which applies here, the State waives immunity when it procures liability insurance in areas where it is otherwise immune. 14 M.R.S.A. § 8116.[9]

Neither of the insurance policies at issue waives the State's immunity to cover the situation at hand. The first insurance policy contains an express exception excluding coverage for any claim for which the insured has immunity pursuant to the Act. We are unpersuaded by the Webbs' circular argument that the exclusion is ambiguous because section 8116 precludes immunity when the State has insurance.

---

**9.** 14 M.R.S.A. § 8116 (Supp.1994) provides:

The legislative or executive body or any department of the State or any political subdivision may procure insurance against liability for any claim against it or its employees for which immunity is waived under this chapter or under any other law. If the insurance provides protection in excess of the limit of liability imposed by section 8105, then the limits provided in the insurance policy shall replace the limit imposed by section 8105. If the insurance provides coverage in areas where the governmental entity is immune, the governmental entity shall be liable in those substantive areas but only to the limits of the insurance coverage. Reserve funds, excess insurance or reinsurance contracts maintained by a governmental entity, by an insurer providing liability insurance or by a public self-funded pool to meet obligations imposed by this Act shall not increase the limits of liability imposed by section 8105.

A governmental entity or a public self-funded pool, which self-insures against the obligations

and liabilities as self-insurance funds. Any such governmental entity which self-insures under this Act or any entity that is a member of a public self-funded pool shall maintain as part of its public record a written statement which shall include a provision setting forth the financial limits of liability assumed by the governmental entity, those limits to be no less than the limits imposed in this Act, and a provision setting forth the scope of the liability assumed by the governmental entity, or the pool, that scope to be no less than that imposed in this Act.

A governmental entity may purchase insurance or may self-insure on behalf of its employees to insure them against any personal liability for which a governmental entity is obligated or entitled to provide defense or indemnity under section 8112.

Any insurance purchased by the State under this section shall be purchased through the Department of Administration, Risk Management Division.

The second insurance policy at issue provides that it will cover "all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto." The Webbs' claim against the State, however, is not based on bodily injury "caused by an accident" resulting from the State's ownership or use of an auto. Therefore, the State has not procured insurance to waive immunity within the meaning of section 8116, and its general immunity shields the State from liability on the Webbs' claim pursuant to the Maine Tort Claims Act. The State's motion to dismiss was properly granted.

## VI.

 In the cross-appeal of the dismissal of the Webbs' claim against the Authority pursuant to the Act, the issues presented to us are whether the action is barred by the statute of limitations and whether it was proper for the trial court to dismiss the Webbs' claim against the Authority because a factual issue exists as to the extent of the Authority's supervision and control over Trooper Haas.

The two-year statute of limitations applicable to the Act may be extended in cases of fraudulent concealment. 14 M.R.S.A. §§ 859, 8110. To delay the running of the statute of limitations due to fraudulent concealment, the Webbs must show that the Authority itself played a role in the concealment or that Haas was acting in the course of his employment for the Authority. *See Gonzalez–Bernal v. United States,* 907 F.2d 246, 250 (1st Cir.1990); *Diminnie v. United States,* 728 F.2d 301, 305 (6th Cir.1984) (to defer accrual of cause of action pursuant to the Federal Tort Claims Act, plaintiff must show that the United States participated in concealment or that conduct may be imputed to the United States because it occurred within an employee's course of employment).

After considering affidavits provided by the Authority stating that Haas is not its employee, the trial court concluded that the Webbs *had failed* to submit any evidence to controvert the Authority affidavits, and de-

termined that the actions of Haas should not be imputed to the Authority. Accordingly, the trial court granted the Authority's motion to dismiss the claim pursuant to the Act because Haas had failed to establish fraudulent concealment of the cause of action by the Authority and the claim was barred by the two-year statute of limitations. The case was inappropriate for a summary judgment because discovery had been stayed as against Haas and the Webbs were unable to obtain evidence to rebut the assertions in the Authority's affidavits. *See* M.R.Civ.P. 56(f). Accordingly, the decision on the motion must be based on the complaint alone.

The complaint alleges that the Authority was the employer of Haas and that Haas and the Maine State Police were acting on behalf of the Authority when they fraudulently concealed the facts of the cause of action. When accepting the facts as stated in the complaint as true, as we must when reviewing a motion to dismiss, *Bowen,* 645 A.2d at 6, the Webbs have alleged sufficient facts to withstand a motion to dismiss. The Authority is not foreclosed, however, from pursuing this issue on a subsequent motion for a summary judgment following completion of discovery.

The entry is:

Judgment of dismissal of plaintiffs' claim against the Maine Turnpike Authority pursuant to the Maine Tort Claims Act is vacated. Judgment affirmed in all other respects. Remanded for further proceedings consistent with the opinion herein.

All concurring.