1999 ME 74

**Kenneth E. WEBB et al.**

v.

**Jeffrey HAAS.**

Supreme Judicial Court of Maine.

Argued Oct. 5, 1998.

Decided May 13, 1999.

David G. Webbert (orally,) Johnson & Webbert, LLP, Augusta, attorney for plaintiffs.

William R. Fisher (orally), Portland, attorney for defendant.

Andrew Ketterer, Attorney General, Paul Stern, Dep. Atty. Gen., Augusta, attorneys for amicus curiae.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, and SAUFLEY, JJ.

DANA, J.

[¶ 1] Jeffrey Haas appeals from an order entered in the Superior Court (Kennebec County, *Alexander, J.*) denying his motion for a summary judgment on the state and federal claims of Kenneth E. and Virginia M. Webb. On appeal, Haas (1) contends that he is shielded by qualified immunity from suit pursuant to 42 U.S.C. § 1983 and (2) challenges the merits of the Webbs' state law claims. We conclude that Haas is shielded by qualified immunity from suit pursuant to federal law and that the causal link between Haas's misconduct and the Webbs' injuries is too tenuous to survive a summary judgment motion.[1]

[¶ 2] This case comes before us for the second time. *See Webb v. Haas*, 665 A.2d 1005 (Me.1995). A complete discussion of the facts appears in our prior decision. We will, therefore, limit the presentation of facts to those necessary to place the issues in context. The Webbs' claims arise out of the abduction and murder of their daughter, Pamela Webb. On July 1, 1989, Pamela was abducted when her truck broke down on the Maine Turnpike. Although New Hampshire authorities found Pamela's body a few weeks later, the identity of the perpetrator remains unknown to this day.

[¶ 3] In 1992, the state police contacted the Webbs to tell them that the *Kennebec Journal* was about to publish an article that detailed the misconduct of state trooper Jeffrey Haas during the investigation of Pamela's murder. Haas was on patrol the night Pamela was abducted. He saw her disabled truck at about 11:30 p.m. on July 1 but did not stop to inspect it until approximately three hours later. When it became clear that Pamela had been abducted, the police

---

1. With regard to the state law claims, Haas also contends that the claims are barred by the Maine Tort Claims Act two-year statute of limitations, 14 M.R.S.A. § 8110 (1980), and that he is entitled to discretionary function immunity, 14 M.R.S.A. § 8111(1)(C) (Supp.1998), and intentional act immunity, 14 M.R.S.A. § 8111(1)(E). Because we conclude that a summary judgment was proper based on the merits of the state law claims, we do not address these arguments.

asked Haas when he had first seen the truck. He responded falsely that he first saw the truck at 2:00 a.m. on July 2. Haas persisted with this false account in various forms, including a falsified patrol check card purporting to have been completed on July 1 at 11:30 p.m. Only after Haas became a suspect in the murder investigation, did he confess the truth. The internal affairs division investigated Haas's misconduct and discharged him in November 1989.

[¶ 4] In April 1992, the Webbs filed a notice of claim pursuant to the Maine Tort Claims Act (MTCA),[2] and in June they filed this action against Haas, the State of Maine, and the Turnpike Authority.[3] In 1993, Haas filed a motion to dismiss, claiming that the Webbs' claims were barred by the statute of limitations and that discretionary and qualified immunity shielded him from liability. The trial court denied the motion, and we affirmed. *Webb*, 665 A.2d at 1008–11. After the completion of discovery, Haas moved for a summary judgment, asserting essentially the same arguments he had advanced in 1993. In addition, he asked the court to rule on the merits of the Webbs' state law claims. The court denied the motion and Haas appealed.

**2.** Title 14 M.R.S.A. § 8107 (Supp.1998) provides in part:

    1. **Notice requirements for filing**. Within 180 days after any claim or cause of action permitted by this chapter accrues, or at a later time within the limits of section 8110, when a claimant shows good cause why notice could not have reasonably been filed within the 180–day limit, a claimant or a claimant's personal representative or attorney shall file a written notice. . . .

**3.** The Webbs' original complaint sought recovery against: Haas for wrongful death, negligent and intentional infliction of severe emotional distress, and violations of the Webbs' state and federal civil rights by failing to stop and investigate, making false statements, and concealing the truth; and both the State and the Turnpike Authority for vicarious liability in the state law claims, negligent hiring, supervision and investigation, vicarious liability in the federal and state civil rights claims, plus violations of the Webbs' civil rights by failing to train and supervise and covering up the investigation.

    In our previous opinion, we affirmed the trial court's dismissal of the Webbs' claims against the State. *Webb*, 665 A.2d at 1011–12. We also vacated the trial court's dismissal of the Webbs' claims against the Turnpike Authority. *Id.* at

## I. INTERLOCUTORY APPEAL OF A DENIAL OF A SUMMARY JUDGMENT

[¶ 5] Our final judgment rule generally precludes the immediate review of the denial of a summary judgment. *Andrews v. Department of Envtl. Protection*, 1998 ME 198, ¶ 4, 716 A.2d 212, 215. We have determined, however, that " 'the denial of a motion for a summary judgment based on a claim of immunity is immediately reviewable pursuant to' the death knell exception to the final judgment rule." *Id.* (quoting *J.R.M., Inc. v. City of Portland*, 669 A.2d 159, 160 & n. 1 (Me.1995)). The death knell exception "permits an appeal from an interlocutory order where substantial rights of a party will be irreparably lost if review is delayed until final judgment." *Id.* (quoting *Cook v. Cook*, 574 A.2d 1353, 1354 (Me.1990)). We apply the death knell exception to the denial of a claim of "qualified immunity because qualified immunity confers more than immunity from damages; it is intended to provide immunity from suit, since 'even such pretrial matters as discovery . . . can be peculiarly disruptive of efficient government.' " *Id.* (quoting *J.R.M.*, 669 A.2d at 160).[4]

1012. The trial court has since granted the Turnpike Authority's motion for a summary judgment. The Webbs have not appealed that decision.

**4.** Citing to recent decisions of the United States Supreme Court, the Webbs contend that we should not review the denial of Haas's motion for a summary judgment because it presents a challenge to the sufficiency of the evidence rather than a pure question of law. Although we are not bound by the Supreme Court's interpretation of its own final judgment rule, we have previously found the Court's analysis on this subject to be helpful. *Andrews*, 1998 ME 198, ¶ 5, 716 A.2d 212, 215. Interpreting two recent Supreme Court decisions, *Johnson v. Jones*, 515 U.S. 304, 313, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995); *Behrens v. Pelletier*, 516 U.S. 299, 312, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996), the United States Court of Appeals for the First Circuit has articulated guidelines to be used by the federal courts in identifying the fine line separating a denial of a claim of qualified immunity that is not immediately appealable and one that is. *See, e.g., Diaz v. Martinez*, 112 F.3d 1, 3–4 (1st Cir.1997); *Stella v. Kelley*, 63 F.3d 71, 75 (1st Cir.1995). On one side of the line is a trial court's "pretrial rejection of a qualified immunity defense . . . that . . .

**[¶ 6]** Recognizing that the availability of an interlocutory appeal in cases such as this is well established, the Webbs argue that we should nonetheless decline to allow this interlocutory appeal because a previous appeal was taken by the defendants. While we do not lightly dismiss the expense and time consumed by multiple appeals, we conclude in this limited circumstance that the resolution of the previous interlocutory appeal does not preclude a second such appeal. We accepted the first appeal from the denial of the motion to dismiss in order to effectuate the teachings of *Andrews*: when a claim of immunity may be resolved without subjecting the parties to the discovery process, it must be heard on appeal.

**[¶ 7]** We determined in the first appeal that the absence of a complete record compelled the denial of the motion to dismiss. *See* M.R. Civ. P. 12(b)(6); *McAfee v. Cole*, 637 A.2d 463, 465 (Me.1994) (motion to dismiss may be granted only where it appears "beyond doubt that a plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim"). We recognized, however, the possibility that completion of discovery could result in a second interlocutory appeal. Indeed, we noted that "the Webbs may fail to withstand a subsequent motion for a summary judgment." *Webb*, 665 A.2d at 1010–1011. Because the reasoning of *Andrews* applies as much to the matter before us now as it did when the matter was presented to us previously, we decline the Webbs' invitation to adopt a "single appeal" rule. Therefore, we will review Haas's claim that he is shielded from liability on the Webbs' section 1983 claims by a qualified immunity.

## II. FEDERAL QUALIFIED IMMUNITY

**[¶ 8]** Pursuant to 42 U.S.C. § 1983,[5] the Webbs contend that Haas violated their constitutional right of access to the courts by attempting to conceal his misconduct. Qualified immunity shields government officials from civil liability under section 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Andrews*, 1998 ME 198, ¶ 11, 716 A.2d 212, 217 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Whether a right was clearly established at the time of the alleged violation is a question of law. *Id.* ¶ 13.

**[¶ 9]** For a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The unlawfulness must be apparent in light of preexisting law." *Id.* ¶ 12 (quoting *Parsons v. Wright*, 649 A.2d 1108, 1111 (Me.1994)). We have cautioned that the violation of a right can be apparent "even though that action has not previously been held to be unlawful." *Id.*

**[¶ 10]** The right of access to the courts "is basic to our system of government, and it is well established today that it is one of the fundamental rights protected by the Constitution." *Ryland v. Shapiro*, 708 F.2d 967, 971(5th Cir.1983). The question, therefore, is whether in 1989 a reasonable police officer would have understood that Haas's

___

turns on either an issue of fact or an issue perceived by the trial court to be an issue of fact." *Diaz*, 112 F.3d at 3 (quoting *Stella*, 63 F.3d at 74). Such a decision is not immediately appealable. *Id.* On the other side is an order "that determines whether certain given facts demonstrate, under clearly established law, a violation of some federally protected right." *Id.* (quoting *Stella*, 63 F.3d at 74–75). In the matter before us, the denial of the claim of qualified immunity presents just such a question of law: whether the facts taken in the light most favorable to the plaintiff support a claim that Haas violated clearly established law. See *Mitchell v. Forsyth*, 472 U.S. 511, 529 n. 9, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

**5.** Title 42 U.S.C.A. § 1983 (1994) provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

conduct constituted a violation of the right of access to the courts. *See Andrews*, 1998 ME 198,¶ 13, 716 A.2d 212, 218. Because the facts of this case are outside the parameters of the case law existing in 1989, we conclude that qualified immunity shields Haas from damages pursuant to section 1983.

[¶ 11] By 1989, the federal courts had established that a government official violated an individual's right of access to the courts when he or she (1) committed a crime which gave rise to an underlying substantive claim or knew a colleague that did so; (2) concealed information that was crucial to the victim obtaining redress in the courts for the damages arising out of the misconduct; (3) did so in an attempt to frustrate the victim's right to obtain relief; and (4) succeeded in interfering with the victim's ability to obtain relief. *See Ryland*, 708 F.2d at 971–75; *see also Gonsalves v. City of New Bedford*, 939 F.Supp. 921, 929 (D.Mass.1996).

[¶ 12] Federal courts have principally looked to two cases to determine whether conduct violated a plaintiff's right of access to the courts: *Ryland v. Shapiro*, 708 F.2d 967 (5th Cir.1983) and *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir.1984). In *Ryland*, a local prosecutor murdered his girlfriend and then conspired with two colleagues to prevent a full investigation into the murder by leading authorities to believe that the death was a suicide. 708 F.2d at 969. Eleven months later, the state Attorney General exposed the coverup and obtained a murder conviction. *Id.* The family of the victim subsequently sued the murderer and his colleagues, claiming that they had interfered with their right to pursue a wrongful death action pursuant to state law. *Id.* at 969–70. The court concluded that the plaintiffs alleged a valid theory of recovery. *Id.* at 973.

[¶ 13] In *Bell*, a police officer shot an unarmed man in the back while attempting to apprehend him. 746 F.2d at 1215. The officer planted a knife in the dead man's hand and conspired with his colleagues to concoct a self-defense justification. *Id.* at 1215–16. The conspiracy was not uncovered until twenty years later, when one of conspirators confessed to the coverup to the local district attorney. *Id.* at 1223. Although a family member filed a wrongful death claim soon after the shooting, the court found that the coverup "rendered hollow" his right to redress pursuant to state and federal law. *Id.* at 1261.

[¶ 14] The Webbs claim that Haas interfered with their state law actions against both the unknown perpetrator and Haas. Their claim is not within the purview of the case law as it stood in 1989. In both. *Bell* and *Ryland*, the individuals charged with interfering with the plaintiff's right of access were either individuals who committed a crime that gave rise to the underlying state or federal claim or were colleagues of someone who did. In *Bell*, the officer shot an unarmed suspect in the back, and in *Ryland*, the prosecutor murdered his girlfriend. *See also Gonsalves*, 939 F.Supp. at 929 (where one defendant's use of unreasonable force was proximate cause of decedent's death).

[¶ 15] The underlying misconduct giving rise to the state law actions against Haas is Haas's failure to stop and investigate Pamela's disabled truck. Failing to stop and investigate a disabled truck is not a crime; it is a violation of state police procedure for which Haas was subject to and received discipline. In 1989, a reasonable officer would not have understood that a coverup of a violation of state police procedure deprived the Webbs of their right of access to the courts.

[¶ 16] The underlying misconduct giving rise to the wrongful death action against the unknown perpetrator is the abduction and murder of Pamela Webb. An official's constitutional duty not to interfere with an individual's right of access to the courts "is simply the requirement that [governmental officials] involved in the investigation of a wrong *perpetrated by a co-employee* under color of state law not conceal the perpetration of that wrong." *Bell*, 746 F.2d at 1262 (emphasis added). There is no allegation that either Haas or a colleague was involved in the perpetration of the murder or abduction. *Cf. Gonsalves*, 939 F.Supp. at 929 (noting that each defendant either participated in the underlying misconduct or knew a colleague that did·so). Nor is there an allegation that Haas attempted to conceal the

identity of the perpetrator. Therefore, Haas's conduct does not rise to the level of a constitutional violation as understood or as apparent in 1989.

### III. STATE LAW CLAIMS

[¶ 17] Having addressed Haas's defense of qualified immunity, it is in the interest of judicial economy to also address the Webbs' state law claims. *See Ryan v. City of Augusta*, 622 A.2d 74, 76–77 (Me.1993). Haas contends that the causal link between his misconduct and the Webbs' alleged injuries is too tenuous to create a genuine issue of material fact in either of the Webbs' state law claims. We agree.

[¶ 18] Pursuant to M.R. Civ. P. 56, we examine the evidence in the light most favorable to the Webbs "to determine if the trial court committed an error of law." *H.E.P. Dev. Group, Inc. v. Nelson*, 606 A.2d 774, 775 (Me.1992). "When the plaintiff has the burden to prove an essential element at trial ... and it is clear that the defendant would have been entitled to a directed verdict at trial if the plaintiff presented nothing more than was before the court ... then the defendant is entitled to summary judgment." *Id.*

[¶ 19] The Webbs allege that Haas is liable to them under state law for (1) the wrongful death of Pamela Webb pursuant to 18–A § 2–804(a) (1998) and (2) for their severe emotional distress caused by his negligent and intentional acts. An essential element of both of these claims is proximate cause. *See* 18–A § 2–804 (wrongful death); *Champagne v. Mid–Maine Medical Ctr.*, 1998 ME 87, ¶ 10, 711 A.2d 842, 845 (negligent infliction of emotional distress).

[¶ 20] Proximate cause is " 'that cause which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which the result would not have occurred.' " *Searles v. Trustees of St. Joseph's College*, 1997 ME 128, ¶ 8, 695 A.2d 1206, 1209 (quoting *Wing v. Morse*, 300 A.2d 491, 495 (Me. 1973)). In light of this definition, we have stated that a negligent act is the proximate cause of an injury only if "the actor's conduct

is a substantial factor in bringing about the harm." *Clement v. United States*, 980 F.2d 48, 53 (1st Cir.1992) (quoting *Wing*, 300 A.2d at 495–96). Proximate cause is generally a question of fact for the jury. *Perron v. Peterson*, 593 A.2d 1057, 1058 (Me.1991). However, "[t]he mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." *Champagne*, 1998 ME 87, ¶ 10, 711 A.2d 842, 845 (quoting RESTATEMENT (SECOND) OF TORTS § 433B cmt. a, at 442 (1965)).

[¶ 21] The negligent acts that the Webbs allege caused their injuries are Haas's failure to stop and investigate Pamela Webb's truck on the night of July 1, 1989, and his subsequent lies to the investigating authorities about that failure. In determining whether a juror could reasonably infer from the evidence that Haas's misconduct was the proximate cause of the Webbs' injuries, we must view the evidence in the light most favorable to the Webbs. *See H.E.P. Dev. Group, Inc.*, 606 A.2d at 775. Haas went on duty at approximately 11:00 p.m. and entered the turnpike at the Gray exit. Pamela Webb's disabled truck was parked in the breakdown lane near Biddeford. A witness reported seeing a woman near the truck at 11:20 p.m. At approximately 11:30 p.m., Haas saw the disabled vehicle but did not stop.

[¶ 22] There is no evidence that directly links Haas to the abduction and death of Pamela Webb. Nor is there sufficient evidence from which a juror could reasonably infer that Haas's acts and omissions were a substantial factor in her death. Although there is some uncertainty in the evidence as to the time that Haas first observed Pamela Webb's disabled truck, any conclusion that Haas passed the vehicle when Pamela was present and that his stopping would have prevented her abduction would be based on pure speculation. *See Perron*, 593 A.2d at 1058 (evidence connecting defendant hunter to death of plaintiff was insufficient as a matter of law). The causal link between

Haas's lies and the Webbs' injuries is even more tenuous. The lack of evidence that Haas's misconduct was a substantial factor in the abduction and death of Pamela Webb is fatal to both the action for wrongful death pursuant to 18–A M.R.S.A. § 2–804(a) and the action for negligent and intentional infliction of emotional distress.

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with this opinion.

