**Joseph CREAMER**

v.

**Daniel R. SCEVIOUR, et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs Nov. 18, 1994.
Decided Jan. 12, 1995.

William C. Leonard, Bath, for plaintiff.

William R. Fisher, Monaghan, Leahy, Hochadel & Libby, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN and LIPEZ, JJ.

CLIFFORD, Justice.

The plaintiff, Joseph Creamer, appeals and the defendants, Daniel R. Sceviour and Scott Sutter, cross-appeal from a decision and order of the Superior Court (Lincoln County, *Bradford, J.*) granting a partial summary

judgment to Sceviour and Sutter on all counts of Creamer's complaint except those allegations contained in Counts II and V alleging a violation of Creamer's First Amendment rights. The court denied summary judgment on those two counts. Creamer's complaint alleges a number of constitutional violations and state law claims pursuant to 42 U.S.C.A. § 1983 (1994), 14 M.R.S.A. §§ 8101—8118 (1980 & Supp.1994), and 15 M.R.S.A. § 704 (1980), resulting from his arrest by Sceviour and Sutter. We agree with that part of the summary judgment granted to the defendants. Because, however, we do not find that there are issues of material fact with respect to Creamer's First Amendment claims, we modify the summary judgment in favor of the defendants to include all claims, and as modified, affirm the judgment.

On the evening of June 27, 1990, Sceviour and Sutter were aiding a third officer in the field sobriety testing and arrests of two motorcyclists in the town of Boothbay Harbor. Creamer, walking in the vicinity with his family, joined a crowd of fifty to one hundred spectators as the officers were testing the second driver.

According to Creamer, he asked one of the defendants what the problem was. After he was told to "move along," he suggested that the officers give the motorcyclists a break although he did not know them and had no knowledge of whether they were intoxicated.

The defendants warned Creamer that he would be arrested if he did not move along. When he stated that the motorcyclists did not do anything wrong, he was placed under arrest and handcuffed.[1] He began yelling and calling the defendants "fucking pigs" after he was sprayed in the face with Cap Stun II.[2] He was not subjected to any additional force by the defendants, and did not receive medical treatment or miss any work following his arrest, nor did he complain to anyone at the police department or jail about his treatment that evening.[3]

■ The defendants filed a motion for a summary judgment on all counts of Creamer's complaint based on the grounds of qualified and discretionary immunity. The motion was granted by the Superior Court (*Bradford, J.*), except as to the claims contained in Counts II and V alleging a violation of Creamer's First Amendments rights. On Creamer's motion pursuant to M.R.Civ.P. 54(b), the Superior Court (*Perkins, A.R.J.*) entered a final judgment from which he appeals. Sceviour and Sutter cross-appeal.[4]

### I. Qualified Immunity

■ A plaintiff may maintain a section 1983[5] claim against governmental employees only if they are not entitled to qualified immunity. Under this doctrine, "government officials performing discretionary functions, generally are shielded from liability for

1. Creamer was arrested for obstructing government administration pursuant to 17-A M.R.S.A. § 751(1) (1983), but the charge was eventually dismissed.

2. Cap Stun II is a stinging but non-harmful inflammatory spray widely used by law enforcement personnel to control people resisting arrest or threatening harm to others.

3. Sceviour and Sutter maintain a different version of the events, claiming that Creamer yelled several times, "You fucking cops are just picking on them because they drive motorcycles," then approached them and said, "You're just fucking harassing them." Creamer, although advised four times to leave or be arrested, continued screaming. Because Creamer's conduct interrupted the field sobriety tests, made it more difficult to control the crowd, and increased the possibility of a riot, he was placed under arrest. He resisted and was sprayed with the Cap Stun II.

4. The denial of a defendant's motion for a summary judgment based on qualified immunity from section 1983 claims is immediately appealable under the collateral order exception to the final judgment rule. *See Mitchell v. Forsyth*, 472 U.S. 511, 524–26, 105 S.Ct. 2806, 2814–16, 86 L.Ed.2d 411 (1985) (*cited in Ryan v. City of Augusta*, 622 A.2d 74, 75 (Me.1993)).

5. 42 U.S.C.A. § 1983 (1994) states in pertinent part:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The two-part test for denial of qualified immunity is (1) whether the plaintiff's constitutional rights were violated, and (2) whether those rights were so clearly established that the defendants would have known that their specific actions transgressed those rights. *Sullivan v. Carrick*, 888 F.2d 1, 3 (1st Cir.1989); *see also Amsden v. Moran*, 904 F.2d 748, 752 (1st Cir.), *cert. denied*, 498 U.S. 1041, 111 S.Ct. 713, 112 L.Ed.2d 702 (1990). "Clearly established" means that the unlawfulness of the act must be apparent in light of pre-existing law, not merely a " 'general declaration of the legal right allegedly violated.' " *Maguire v. Municipality of Old Orchard Beach*, 783 F.Supp. 1475, 1480 (D.Me.1992) (citations omitted). This latter inquiry is objective and is concerned with the reasonableness of the defendant's conduct, not whether the plaintiff's rights were actually violated. *Amsden*, 904 F.2d at 751–52.

■ A defendant will be successful on a summary judgment motion in a section 1983 action if he shows *"either* that the law establishing the right allegedly violated was not clearly established, *or* that, in light of the facts and circumstances known to these officers, and the clearly established law, a 'reasonable' police officer could have believed that the challenged action was lawful." *Vitalone v. Curran*, 665 F.Supp. 964, 974 (D.Me.1987) (emphasis in original). We review the trial court's decision for errors of law, viewing the evidence in the light most favorable to the party against whom the judgment was entered, and will affirm a summary judgment "when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *Finnemore v. Bangor Hydro–Elec. Co.*, 645 A.2d 15, 16 (Me.1994).

### A. Probable Cause to Arrest

■ Creamer first argues that his right to be free from unreasonable seizure was violated because he was arrested without probable cause. Sceviour and Sutter do not disagree that an arrest without probable cause violates a clearly established constitutional right, but rather focus on the objective reasonableness of their belief that probable cause existed. If the presence of probable cause to arrest is at least arguable, even if such conclusion turns out to be incorrect, they are entitled to immunity. *Prokey v. Watkins*, 942 F.2d 67, 72 (1st Cir.1991). Only when it is obvious, on an objective basis, "that no reasonably competent officer would have concluded" that probable cause for an arrest existed, will personal liability attach. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

■ The evidence, when viewed in the light most favorable to Creamer, shows that he approached the defendants while they were performing a police function and challenged their judgment to do so. He does not deny that he distracted the individual being field-tested for sobriety, and that the tests had to be stopped as a result, and he admits yelling and screaming "You fucking cops" at the defendants, although only in response to being arrested. The evidence that there was a large group of spectators that had gathered to watch this event, and that the situation was growing increasingly tense, contradicts the assertion of Creamer, admittedly not an expert on the issue of crowd control, that there was no danger of a riot. Because the defendants' "conduct would strike an objective observer as falling within the range of reasonable judgment," *Gooden v. Howard County, Md.*, 954 F.2d 960, 965 (4th Cir.1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 638–39, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987)), they are entitled to qualified immunity as a matter of law. *Maguire*, 783 F.Supp. at 1481.

### B. Free Speech

■ Creamer further contends that Sceviour and Sutter violated his right to free speech because what he said to them was a substantial motivating factor for his arrest. Although certain governmental action taken in retaliation against the exercise of free speech violates the First Amendment, *Mozzochi v. Borden*, 959 F.2d 1174, 1179 (2d

Cir.1992), the "question is whether a claim for retaliation can be sustained when the criminal prosecution was supported by probable cause." *Id.* When there is a basis for an arrest of a speaker independent of the defendant's motive, no constitutional violation occurs. *Id.* at 1180.

■ Because there were reasonable grounds for the defendants to believe that probable cause to arrest Creamer existed, we do not question whether the defendants' intent was to "retaliate against him for engaging in protected conduct [and] was a 'substantial' or 'motivating' factor" in their decision to arrest him. *Broderick v. Roache,* 996 F.2d 1294, 1298–99 (1st Cir.1993); *see also Cannon v. City of Denver,* 998 F.2d 867 (10th Cir.1993) (no immunity where defendants arrested protesters for disturbing the peace based on specific content of signs, not improper picketing). As we have previously noted, the State is not "without power consistent with the rights of free speech and assembly to control confrontations between its citizens and the police . . . ." *State v. John W.,* 418 A.2d 1097, 1108 n. 9 (Me.1980). Contrary to Creamer's contention, our decision in *State v. Janisczak,* 579 A.2d 736 (Me.1990), does not compel a different result. *See State v. Griatzky,* 587 A.2d 234, 238 (Me.1991) (conviction for disorderly conduct affirmed where defendant's abusive language, delivered in presence of large and unruly group exhibiting tendencies toward violent acts, challenged officer's authority and implicitly exhorted group to join in that challenge).

Furthermore, a plaintiff must allege "that his speech was in fact chilled or intimidated" in order to show a deprivation of a First Amendment right. *Sullivan v. Carrick,* 888 F.2d 1, 4 (1st Cir.1989); *see also Mozzochi,* 959 F.2d at 1180 (no First Amendment right to be free from "criminal prosecution supported by probable cause that is in reality an unsuccessful attempt to deter or silence criticism of the government"). Creamer's complaint does not allege that his speech actually was chilled or intimidated, but asserts only that the defendants' actions were taken in an attempt to prevent him from speaking. When a "chilling effect is speculative, indirect or too remote," *Sullivan,* 888 F.2d at 4, no violation will be found. The defendants' conduct did not violate Creamer's constitutionally protected First Amendments rights and they are entitled to summary judgment. *See Mozzochi,* 959 F.2d at 1179–80.

## II. Discretionary Immunity

■ Creamer also alleges state law claims pursuant to the Maine Tort Claims Act (MTCA). As in section 1983 cases, the MTCA grants governmental employees "absolute immunity from personal civil liability for performing discretionary functions." *Moore v. City of Lewiston,* 596 A.2d 612, 615 (Me.1991); *see* 14 M.R.S.A. § 8111(1)(C), (E) (Supp.1994).[6] The only limitation placed on discretionary immunity is that the contested actions "be essential to the realization or accomplishment of a basic governmental policy, program or objective." *Miller v. Szelenyi,* 546 A.2d 1013, 1021 (Me.1988).

■ Creamer does not argue that the act of making a warrantless arrest is not a dis-

---

6. The MTCA provides in part:

> Notwithstanding any liability that may have existed at common law, employees of governmental entities shall be absolutely immune from personal civil liability for the following:
>
> . . . . .
>
> C. Performing or failing to perform any discretionary function or duty, whether or not the discretion is abused; and whether or not any statute, charter, ordinance, order, resolution, rule or resolve under which the discretionary function or duty is performed is valid.
>
> . . . . .
>
> E. Any intentional act or omission within the course and scope of employment; provided that such immunity shall not exist in any case in which an employee's actions are found to have been in bad faith.
>
> The absolute immunity provided by paragraph C shall be applicable whenever a discretionary act is reasonably encompassed by the duties of the governmental employee in question, regardless of whether the exercise of discretion is specifically authorized . . . and shall be available to all governmental employees, including police officers . . . who are required to exercise judgment or discretion in performing their official duties.

14 M.R.S.A. § 8111(1)(C), (E) (Supp.1994). For activities not immune under section 8111, the MTCA establishes "broad liability" on the part of the employee. *Moore,* 596 A.2d at 615; *see* 14 M.R.S.A. § 8102(2–A) (Supp.1994).

cretionary function. *See Leach v. Betters,* 599 A.2d 424, 426 (Me.1991). Instead, he contends that the question of whether the acts of the defendants were reasonably encompassed by the duties of a police officer generated an issue of material fact making summary judgment inappropriate. Discretionary immunity, however, applies unless the defendants' conduct "clearly exceeded, as a matter of law, the *scope* of any discretion [they] could have possessed in [their] official capacity as [police officers]." *Polley v. Atwell,* 581 A.2d 410, 414 (Me.1990) (emphasis in original); *see also Darling v. Augusta Mental Health Inst.,* 535 A.2d 421, 425 (Me. 1987) (immunity applies only to government employees whose conduct is "within scope of their employment"); *cf. Maguire,* 783 F.Supp. at 1477, 1478 (police officer's act of threatening plaintiff with night stick and future harm if plaintiff protested towing of his car exceeded conduct given immunity by section 8111). Because the evidence shows that Creamer was arrested for interfering with an arrest-in-progress in a potentially dangerous situation, the defendants did not clearly exceed the scope of any discretion they possessed as police officers.

█ Finally, Creamer asserts that discretionary immunity under section 8111 is not a defense to a claim alleging a violation of 15 M.R.S.A. § 704 (1980).[7] We have not addressed whether immunity under the MTCA abrogates the statutory remedy in section 704, and we need not do so here. *See Leach,* 599 A.2d at 426 (Law Court assumed without deciding that section 704 remains effective after passage of MTCA and that "unreason-

able force" constitutes wanton and oppressive conduct).

Assuming that section 704 is applicable to the instant case, the evidence does not support a conclusion that the defendants engaged in wanton and oppressive conduct. Taken in the light most favorable to the plaintiff, the evidence shows that he initiated contact with the police officers while they were engaged in the process of conducting field sobriety tests and making arrests, and, in front of a large crowd of people, suggested that the drivers be left alone. After failing to move along, he was sprayed with a stinging but non-harmful substance, handcuffed, and arrested for obstructing government administration. He suffered no physical harm other than temporary stinging in his eyes. As in *Leach,* the evidence might support a conclusion that more force than necessary was used, but it does not support a conclusion that the force was unreasonable or that the defendants acted with "ill will, bad faith, or [an] improper motive." *Leach,* 599 A.2d at 426.

The entry is:

Judgment in favor of defendants modified to include all claims alleged. As modified, judgment affirmed.

All concurring.

---

7. In pertinent part, 15 M.R.S.A. § 704 (1980) states that every

> police officer shall arrest and detain persons found violating any law of the State or any legal ordinance or bylaw of a town, until a

legal warrant can be obtained ... but if, in doing so, he acts wantonly or oppressively, or detains a person without a warrant longer than is necessary to procure it, he shall be liable to such person for the damages suffered thereby.